UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 3:07-cr-056 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| PETER KOTT , | ) | [Re: Docket No. 223] |
| | ) | |
| Defendant. | ) | |

## I. MOTION PRESENTED

At docket 223, the United States moves to exclude certain evidence which it anticipates defendant Peter Kott will seek to present at trial. Kott responds at docket 226. The court permitted the motion papers to be filed under seal, because they touch upon on-going non-public investigations. The court has concluded that it is not necessary to file this order under seal.

Oral argument on the motion would not be of benefit to the court.

## II. ISSUES PRESENTED

The parties' papers address the admissibility of several types of evidence. The following questions must be answered.

A) Is evidence that Bill Allen and Rick Smith made campaign contributions to candidates admissible?

B) Is evidence that VECO paid for polling relating to candidates in addition to Kott admissible?

C) Is evidence of the voting records of other legislators on PPT admissible?

D) What, if any, restrictions should the court impose on Kott's cross-examination of Bill Allen and Rick Smith?

## III.  DISCUSSION

A preliminary matter must be mentioned before turning to the specific issues presented.  In its papers the United States expresses concern that Kott seeks to admit much of the disputed evidence in order to make a selective prosecution argument (everybody else did it, so why pick on me) to the jury.  Were such an argument tolerated, it could lead to jury nullification (he violated the law, but we acquit because it's unfair to pick on him).  Kott has abjured any effort to make such an argument.  The court will enforce that promise.  No more need be said about selective prosecution and jury nullification.

### A.  Campaign Contributions

Kott seeks to introduce evidence of Allen and Smith's substantial history of campaign contributions to a host of Alaska candidates.  The United States points out that it is not prosecuting Kott based on any alleged impropriety in his receipt of campaign contributions.  Rather, its theory is that Kott accepted things of value which were illegal–a poll paid for by a corporation and sundry benefits that were not campaign contributions in exchange for employing his legislative office as directed by VECO executives.  Thus, says the United States, evidence of Allen's and Smith's contributions to other candidates is irrelevant.

The threshold for relevance is low.  Rule 401 provides that any evidence which "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" is relevant.  The recorded conversations to be introduced in evidence by the United States will include talk which may reasonably be understood to stand for the proposition that Allen, Smith, Kott, Ben Stevens, and others were engaged in a conspiracy involving the trading of legislative acts for illegal benefits from VECO, and that Allen and Smith held sway over various legislators (including Kott) by virtue of putatively illicit financial support.  What Kott knew

-2-

about the actions of Allen and the others and whether he intended to assist them in such a scheme is, of course, something of consequence to the determination of the action.

Kott is a former Speaker of the House of Representative. That fact readily supports the inference that he would have made himself aware of sources, including public records showing which contributors were supporting which candidates. The evidence of campaign contributions Kott proposes to introduce would support a conclusion that he believed the influence Allen and Smith held was obtained through lawful campaign contributions, not illegal financial deals.

The United States does not appear to have opposed introduction of evidence showing Allen's and Smith's campaign contributions to Kott himself, but to be thorough the court will set out its view on that evidence as well. With respect to Kott himself, the recording in which Allen explains to Smith that he is angry that lobbyist Knauss is taking credit for lining up Kott's vote on PPT when "I put more money in Peter Kott than [Knauss] ever even thought about "[1] could be understood by the jury to mean Allen had given a lot of bribes to Kott, a point that certainly would be of consequence in this case. Evidence showing that Allen made substantial lawful campaign contributions to Kott has a tendency to make it less likely that Allen was referring to bribes, or that Kott would consider similar statements he himself heard to be references to illegal activity.

In summary, the court will admit evidence of Allen's and Smith's campaign contributions to legislative candidates made during the time period relevant to this case.

## B. Polling

Under Alaska law corporations may not make contributions to candidates for public office.[2] With respect to Kott's plan to introduce evidence relating to political polling, the government's position has been stated as follows: "There is no basis to permit the introduction of evidence concerning, or cross-examination relating to, any political polls other than the one in July, 2006, that was done at Mr. Kott's request and

---

[1] Ex. B to doc. 226 (document is filed under seal).

[2] AS 15.13.074(f).

-3-

was paid for by VECO. Evidence that VECO paid for polls for other politicians is not relevant to the crimes for which Mr. Kott has been charged."[3] For his part, Kott takes the position that he did not request the poll and that VECO did with some frequency purchase polls relating to other candidates. It follows, argues Kott, that his position that he did not request any poll is more believable when it is shown that VECO often did pay for polls relating to other candidates. The court agrees; the evidence is relevant to show that because VECO often purchased polls, VECO's purchase of a poll about Kott is less likely to have been made because Kott asked for it.

The United States also asks the court to exclude the evidence pursuant to Rule 403 on grounds that it will mislead the jury, because Kott is offering it to support an argument that the law permits corporate contributions to candidates via the purchase of polls. In fairness to the United States, comments made by defense counsel on the record on September 7, 2007, might be understood to stand for that proposition. However, defense counsel has made it plain at docket 226 that no such argument will be advanced, and the court will enforce that promise.

The possibility that one or more of the polls VECO purchased relates to a person who is subject to an on-going non-public investigation is not a reason to exclude evidence that such a poll or polls was purchased. There is no need for either party to elicit evidence as to which of the polls purchased, if any, relates to someone who is under investigation. Counsel is directed to frame inquiry on the polling topic to avoid eliciting an answer which would disclose that any person whose electoral prospects were the subject of a VECO purchased poll is, or is not, the subject of an on-going investigation.[4]

Subject to the aforesaid requirements for caution by counsel in the conduct of witness examination, the court will admit evidence of other polls purchased by VECO during the relevant time period.

---

[3]Doc. 223 at p. 5 (document is filed under seal).

[4]Depending on the who is the witness, the witness might now utterly nothing about other investigations.

-4-

### C. Others' Votes on PPT

This issue is not squarely joined in the briefing. In the abstract, the court agrees with the United States that how other legislators voted on PPT has nothing to do with whether Kott is guilty or not guilty of the charges in this case. On the other hand, depending on what evidence the United States introduces to show that Kott was doing VECO's bidding, how a particular legislator voted could be relevant. For example, consider this hypothetical: The United States elicits testimony from Allen that he instructed Kott to persuade legislator X to vote for a particular proposition, and Kott reported to Allen that Kott had extracted X's promise to vote for the proposition. Evidence that in fact X voted differently would support an inference that Allen's testimony was not truthful (as well as the competing inference that X reneged on a promise to Kott.) A ruling must be reserved on this topic.

In summary, this evidence may only be introduced if its relevance is manifest after other evidence has been presented, or, following an offer of proof, the court becomes convinced that it is relevant.

In addition to evidence of how particular legislators voted, Kott says he expects to introduce evidence of a general nature about how the legislative process works and the nature of PPT. The court does not understand such evidence to be within the reach of the government's motion. If it was intended to be, a more precise objection to such evidence will have to be made and addressed at a later time.

### D. Cross-Examination of Allen and Smith

The United States asks the court to foreclose cross-examination of either Allen or Smith that relates to possible participation in on-going investigations which are not public, although the existence of one or more investigations may be known to the public at a generalized level. Kott strenuously resists any restriction on his ability to cross-examine Allen or Smith as an infringement of his Sixth Amendment right to confront the witnesses against him and emphasizes that ultimately this case comes down to who is lying to the jury "Smith/Allen or Kott."[5] Even if Kott ultimately exercises his Fifth

---

[5]Doc. 226 at p. 12 (document filed under seal).

Amendment privilege against self-incrimination by choosing not to testify, it is very clear that the testimony of Messrs. Allen and Smith is potentially critical evidence. Thus, imposing any restriction on Kott's ability to cross-examine either man must be carefully considered.

Both parties recognize that under certain circumstances a trial court may impose reasonable limits on a defendant's cross-examination of government witnesses. In *United States v. James*,[6] the Ninth Circuit identified three questions which must be asked by the court: (1) Is the evidence to be excluded relevant? (2) Are there legitimate considerations which outweigh the defendant's interest in presenting the evidence to be excluded? (3) After exclusion of the evidence does the jury have sufficient information to assess the witness' credibility?

Here, the evidence is clearly relevant, for the participation by Allen and Smith in other investigations tends to show how closely aligned with the United States' prosecutorial interests they may have become. One thing that is not very clear to the court is the extent to which the government's interest in preserving the confidentiality of on-going investigations could outweigh Kott's interest in presenting the evidence. The court would be surprised to learn that any of the investigations had not yet reached a stage in which targets have been identified and notified of their status. It has been reported in the press that Allen and Smith are cooperating in a wide-ranging investigation of political corruption. The existence of at least two of the three investigations which the court understands to be involved have been reported in national as well as local news media. In sum, it is not at all clear that foreclosing cross-examination here would be consistent with application of the second *James* factor. In addition, without knowing more about what Kott thinks he can elicit through cross-examination on these matters and how it would differ from what he could elicit from examination on other matters bearing on Allen and Smith's credibility, the court is unable to determine how the third factor should be weighed.

---

[6]139 F.3d 709, 713 (9th Cir. 1998) (Sedwick, D.J. sitting by designation).

Case 3:07-cr-00056-RRB   Document 229   Filed 09/10/07   Page 6 of 7

This particular aspect of the pending motion does not need to be resolved prior to opening statements. Mr. Wendt will be able to explain to the jury, if he wishes to make the point in opening, that the testimony of Messrs. Allen and Smith will have to be viewed cautiously because they have made "deals" with the United States and that on cross-examination the significance of the deals will be disclosed. Mr. Wendt could go on, if he chooses, to offer some examples of what he expects to elicit on cross-examination if it is his wont to get into such detail in his opening. However, it will not diminish the efficacy of his opening statement if he does not speak to the particulars of Allen's and Smith's involvement in the three investigations. This topic can and will be deferred to a closed hearing to be held prior to the time either Allen or Smith takes the stand. At the hearing the court will expect the United States to be forthcoming with details about just what would be at risk if Allen and Smith were to be opened to full cross-examination so the court can evaluate the second *James* factor. Then, if the second factor is not dispositive, the court will expect an offer of proof from Kott sufficient to allow the court to apply the third *James* factor.

## IV. CONCLUSION

The motion at docket 223 is **DENIED** in part and a ruling is reserved in part consistent with the discussion above.

DATED at Anchorage, Alaska, this 10th day of September 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE