# APPENDIX A

Former Senator RICK HALFORD was a close associate of ALLEN until he began representing an organization who was pushing for a liquid natural gas pipeline which is in opposition to the Governor's version of the gas pipeline. While in the senate, ALLEN purchased a lodge from HALFORD FOR $270,000. ALLEN believes the purchase was made at fair market value.

ALLEN acknowledged that he had given cash to Representative VIC KOHRING in Suite 604 of the Baranof Hotel in Juneau, Alaska during the past legislative session. ALLEN said he knew it was wrong to give money to KOHRING; however, his motivation was to help KOHRING for whom he felt sorry. He has given KOHRING cash on approximately three or four separate occasions. One such time, ALLEN gave him $500 so, KOHRING could purchase an airline ticket to fly to Portland to visit his wife. KOHRING has financial problems and sleeps in his legislative office in Juneau to save money. Whenever ALLEN is in Juneau, KOHRING asks to have dinner with SMITH and/or ALLEN which is always paid by ALLEN. It is not unusual for KOHRING to order several entrees and take some of the food back to his office. ALLEN requested KOHRING to lobby his fellow legislators to support the Governor's version of the natural gas pipeline.

Representative PETE KOTT recently refinished the hardwood floor in ALLEN's residence. KOTT charged ALLEN approximately $12,000 for the job. KOTT who was running for re-election was in a tight race with his opponent. As a result, KOTT's son, PETER KOTT, was assisting with the campaign full time and was unable to work his normal job. To compensate PETER KOTT for the time he was working on the campaign, ALLEN and SMITH agreed to reimburse KOTT for the lost wages through the hardwood flooring business. ALLEN acknowledged giving KOTT cash in the Suite 604 of the Baranof Hotel during the last legislative session. The cash was not a reimbursement KOTT. ALLEN also acknowledged that KOTT was essentially working for ALLEN in pushing the Governor's version of the PPT tax and natural gas pipeline which included KOTT lobbying his fellow legislators for their support.

When asked about Representative TOM ANDERSON's contract with VECO Corporation, ALLEN said he was unaware of the details of contract and that RICK SMITH handled the interactions with ANDERSON relative to his employment with VECO.

BA got a call that.
BA was in Thailand, Pete was going to organize of the Documents
People thought BA did it but BA didn't know Pete was going to do it.


Pete was staying @ BA's house, so BA doesn't think he gave him any cash during the summer.
He didn't pay any rent, & had all kinds of flex jobs. He had a whole bunch of jobs.
Lived w/ him from about June to August → then got a jt in Petersburg.
BA doesn't remember giving Pete any $ in daylight summer. — 5K. Pete bought a big ol' truck, BA helped him fix the truck.
→ BA found a really good deal from Northsiders. He ran for the floor.
BA wanted to build a X & it had a good lift he was about a 2 ton. It had a great big gasoline motor instead of a diesel, which is the only thing that wasn't good.
BA helped him (BA) of 5K to get his financing.
— Pete said he needed a truck
— they were driving down Gamble & BA saw the truck, they contacted them & they gave a good deal.
Pete never reimbursed BA for the 5K. Considered loan, but didn't push him for it.
Pete told him he needed the $ to get the financing.


PK never said much about his divorce. His son & daughter weren't happy.
BA thinks Debra was living w/ him but that ended b/c BA would see Debra & her together.
They are living in Juneau now. Debra has a little girl ~ 12 or 13.
BA can't remember how he gave the 5K.


The only time he gave him cash was the $1000 when he went to Markowski's fundraiser.
In BA's mind it was a reimbursement for the campaign contribution, but BA didn't tell him what it was for. BA didn't tell him to make the contribution.
Rick asked him (BA) to.
BA doesn't remember anyone else who was asked to make a contribution


000042

-1-

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  03/30/2007

On September 27, 2006, a source, who is in a position to testify, was interviewed and provided the following information to SA Mary-Beth Kepner and SA Chad E. Kadera:

Source advised of his/her relationship with Pete Kott. Source stated, "it's been [a] lot of years." Source did not know Kott before Kott was an Alaska State Legislator. Source knew Romona LNU, which is how source met Kott 12 to 15 years ago. Romona taught Kott how to be a good legislator. Source and Kott "clicked" and the relationship developed because of Romona. Source further advised that he/she always had a fundraiser for Kott.

Source advised of a time when Exxon wanted to put a plant on the slope (writer knows this to be the Prudoe Bay North Slope area in Alaska) to turn natural gas into liquid. This was a different process than LNG. British Petroleum has a pilot plant in Kenai right now using this type of process. Ramona was against the plant because she wanted LNG. Rick Smith and source were in Juneau and started to work on Exxon, which "pissed off" Ramona. The resulting fallout was bad for Kott.

Later, Kott started working on different committees and assumed leadership positions. Romona did as well.

Kott lost flooring equipment, such as floor sanders, in a warehouse fire that took place sometime between 1998 and 2000. As a result, source purchased Kott new equipment, including sanders, vacuums, belt sanders and saws. The equipment was purchased through Rex McKay and Derrick Awad. Source estimates the equipment cost between approximately $10,000 to $12,000. When source was building his/her house, Kott put in the floors. Source estimates this cost around $24,000 to $25,000.

Kott did not do the floor work at United States Senator Ted Stevens' house. Source stated Kott does not like to put in anything other than wood. For payment, source stated he/she would have wrote a check to Kott from source.

Source does not recollect whether Kott ever discussed disclosure to APOC or not.

**000046**

---

Investigation on  9/27/2006  at  Anchorage, AK
194A-AN-13620-BALLEN / 270D-AN-14626
File #  800A-AN-A13718-Squad 4                          Date dictated  3/30/2007

by  SA Mary-Beth Kepner & SA Chad E. Kadera/cek

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194A-AN-13620 / 270D-AN-14626

Continuation of FD-302 of ___Source_____, On _9/27/2006_____, Page __2__

    Kott also may have performed work around source's house windows. Kott later did more work on the floors near the residence entrance including the steps into the kitchen area and refinishing the floors. Kott refinished the floors on the entire first level of the house, the upstairs steps and downstairs steps. Kott did not do the floors upstairs. The floors upstairs are lighter than the downstairs floors. Source advised that "they [Kott and his partner] worked their butt off."

    Source stated that he/she thinks he/she paid approximately $17,000 for the aforementioned refinishing work. The initial invoice was for $12,000. Source advised that Kott told source it was just $12,000, but source said that Kott did more than that, so the rest was a bonus.

    Source advised that Kott did not know whether he (Kott) was going to run again for the legislature. Source remembers a conversation about how he/she was going to compensate Pete Kott Jr. on the campaign. Source thought Rick Smith was going to take care of it and get work (flooring work) done in his house. Source advised that he/she does not recall seeing a check. Kott did not want to give source an invoice, but source told Kott, "bullshit, you worked hard."

    Source was going to help Earl Mayo, but that was for Kott. Kott needed to earn money from someplace, but Kott could not work on the hardwood floor business at the same time as he was campaigning. Smith told source that he was going to take care of it. Source stated he/she knew the invoice was going to be inflated to compensate Kott. Source stated he/she never figured out how they did it.

    When Kott was reelected in 2004, it took a lot of time. Source told Kott that John Harris is running all over the state [campaigning] and that Kott has to get off the floors if you're going to be Speaker [of the House]. Source knows Harris used his campaign money for travel and APOC did not do anything regarding Harris' actions.

    Source advised of when he/she was in Thailand and source received a call that Kott was going to organize with the Democrats. Source advised that people believed source did it, but source stated he/she did not know Kott was going to do this.

194A-AN-13620 / 270D-AN-14626

Continuation of FD-302 of ___Source_____, On _9/27/2006_, Page __4__

    Source stated Kott would have worked on the PPT [writer knows this to be the Petroleum Production Tax bill] if source did not pay him any money. Source remembers a conversation when Kott called source and asked, "What are my instructions?" There were a lot of strategy conversations in the suite [writer knows this to be Suite 604 at the Baranof Hotel in Juneau, AK] and Kott was a part of those conversations.

    Source recalls a conversation when Kott was "sitting on" Fred Dyson's abortion bill because Dyson was the other way on the PPT. Source advised that there were conversations with Kott directing him to talk to Gabriel LaDoux. Kott told source, "he had her," and "she's fine."

    Sometimes Kott would tell source how to proceed [writer knows this refers to lobbying actions related to the PPT and gas pipeline legislation]. Source stated that Kott was working for source because they were close, but also because source wanted a 20/20 tax, and if passed, the oil companies would start building a gas pipeline.

    Source advised that there was a time when the oil companies wanted the proposed PPT bill killed. They had a "senite dae," which source explained is a Latin term. As soon as Kott said it [the PPT bill] was dead, Harris "hit the hammer" and they were excited because they could not believe they got it done.

    Source advised he/she would ask Kott what he really wanted to do and Kott would reply, "Barbados." [writer knows this refers to Kott being a prison warden]. Source advised this was a joke. Kott told source the best thing to be would be a lobbyist and source told Kott that he/she would help him. Source stated that he/she told Kott that his job was to get the gas pipeline and that they always said that. Source does not think Kott knew what he wanted to do.

    Source advised that Kott told him/her it was five minutes too late for withdrawing his application to run for office again.

    In response to the interviewing Agents asking what Kott would not have without source's assistance, source stated Kott wouldn't have the truck. The request for the truck came through Smith, but source may have talked about the truck to Kott directly. Source stated that Roger Chan told source that source could not give Kott the truck. Source would probably have given Kott the

37. PETE KOTT had his flooring equipment stored in Juneau, AK and a fire destroyed the equipment. This occurred in about 2003. BILL ALLEN had Derrick Awad at the VECO fabrication shop order about $12,000 worth of flooring equipment which was given to PETE KOTT. VECO Corporation paid for the equipment purchased. PETE KOTT never repaid BILL ALLEN or VECO for the $5,000 for the truck or the $12,000 for the equipment.

38. PETE KOTT refinished BILL ALLEN'S floors in his personal residence during 2005. The original invoice was for approximately $12,900. PETE KOTT'S son, PETE KOTT Jr. also works with PETE KOTT in his flooring business. PETE KOTT Jr. worked on PETE KOTT'S campaign and thus was unable to work in the flooring business and receive wages. BILL ALLEN wanted to compensate PETE KOTT Jr. for his work on PETE KOTT'S political campaign. PETE KOTT issued a second invoice for BILL ALLEN'S floor job that was approximately $19,900. BILL ALLEN issued two checks to PETE KOTT which he believed totaled the amount billed on the second invoice. PETE KOTT also donated $1,000 to the MurKowski governor campaign during 2006. BILL ALLEN reimbursed PETE KOTT with $1,000 cash in 2006 for this donation.

39. PETE KOTT also stored flooring items at the VECO "Toy Store" facility at no charge. RICK SMITH was aware of this. PETE KOTT lived at BILL ALLEN'S personal residence for approximately three months during June through August of 2004. BILL ALLEN believed this was about the same time PETE KOTT purchased the truck. PETE KOTT did not pay any rent to BILL ALLEN for living with him or for storing tools at the Toystore.

40. BILL ALLEN also gave PETE KOTT'S granddaughter $500 to $1,000 several years ago to participate in a beauty pageant. This was at the request of PETE KOTT'S daughter-in-law.

41. BILL ALLEN has known Vic Kohring, an Alaska political legislator for 15 to 20 years. He met him at John Cowdery's house. BILL ALLEN would take Vic Kohring out to dinner when BILL ALLEN was in Juneau, AK. BILL ALLEN gave Vic Kohring $500 cash on four or five different occasions during the last few years. Vic Kohring had limited finances and slept in his Juneau office. He had a residence in Wasilla, AK and his wife and daughter lived in Oregon. This past year Vic Kohring came to the 604 Suite in Juneau, AK and met with BILL ALLEN and RICK SMITH. He owed funds on a credit card and was seeking assistance with paying the debt. BILL ALLEN recalled giving VIC KOHRING about $1,000 cash which BILL ALLEN said was for Vic Kohring's daughter's Girl Scout uniform. BILL ALLEN also recalled that he had given Vic Kohring $1,000 at the Island Pub in Juneau a month before the meeting in Suite 604. BILL ALLEN also provided a VECO job to Vic Kohring's during the past summer.

000059

FD-1023 (Rev. 08-02-2007)

# FEDERAL BUREAU OF INVESTIGATION

Confidential Human Source (CHS) Reporting Document

---

**Reporting Date:** 09/07/2008

**Case ID:** 194A-AN-13620-BALLEN (Pending)
 270D-AN-14622 (Pending)
 800A-AN-13718-Squad 4

**Contact Date:** 09/07/2008

**Type of Contact:** In Person

**Location:** Anchorage, Alaska

**Written by:** SA Mary Beth Kepner

**Other(s) Present:** None

**Source Reporting:**

Also present during the interview were United States Attorneys JOE BOTTINI and JAMES GOEKE along with defense attorney ROBERT BUNDY.

A source who is in a position to testify provided the following information:

The source had a sexual relationship with ▇▇▇ who was an adult prostitute at the time. The source recalled paying for airline tickets for ▇▇▇ and her mother to move to Spokane Washington. The airline tickets were not purchased to hide ▇▇▇ but rather to help ▇▇▇ make a fresh start in a new area. The source paid for ▇▇▇ rent before she moved to Spokane. After returning from Spokane, ▇▇▇ tried to extort $25,000 from the source by threatening to expose his relationship with her and an under aged female, ▇▇▇. The source refused to pay ▇▇▇ and hired JIM GILMORE, an attorney, to advise him on this matter. After the arrest of JOSEPH BOEHM and ▇▇▇, ▇▇▇ renewed her extortion attempts. ▇▇▇ mother also participated in this extortion effort. The source shared with ▇▇▇ that ▇▇▇ was trying to extort money from him. ▇▇▇ said that she would stop ▇▇▇. ▇▇▇ then asked to speak with the source's attorney. The source does not know the outcome of the conversation or what ▇▇▇ discussed with his attorney. The source did not ask ▇▇▇ to make a false statement. The source denied ever offering to pay anyone money to make a false statement.

Sometime after BOEHM was arrested, BILL BITTNER, a civil attorney representing BOEHM, asked the source to say that ▇▇▇ was extorting him. The source said it wasn't true and refused to make that statement. BITTNER said that if the source

000948

302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription 03/28/2007

A source who is in a position to testify provided the following information:

The source has never made a statement under oath that he/she knew was false or misleading nor has the source encouraged others to make a false statement under oath.

000974

Investigation on 3/10/2007 at Anchorage, Alaska

File # 270D-AN-14622; A-30 194A-AN-13620-     Date dictated Typed 3/10/07

by SA Steve J. Dunphy
    SA Mary Beth Kepner

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

Kott was aware that VECO had bid on a government contract to build a prison facility on Barbados. As a joke, Kott mentioned to various persons employed by VECO that he should be hired as the warden of that facility. Allen continued with this joke during a number of conversations. Kott never made the statements with any intention of actually seeking that employment. Kott has no intention of moving to Barbados. Kott is not qualified to serve as a prison warden, and he was not certain as to exactly where Barbados was located.

During 2004, Allen made Kott a personal loan of approximately $5,000 for a cash down payment on a truck. The truck was described as a used Chevrolet Silverado with a white box cover. Kott bought the truck from a dealership, Cal Worthington Ford of Alaska, in Anchorage. Allen probably gave Kott the money while driving from his house to the dealership. Kott has never repaid any of the loan. Allen has never asked for Kott to pay any of the loan back. At the time of this loan, Kott was house speaker.

Kott refinished the floor at Bill Allen's residence approximately one or two months before the interview. Kott originally billed Allen for approximately $9,000 to $11,000. Kott's son worked for him in the floor business. During this period of time, Kott and Allen discussed a re-election campaign by Kott for the Alaska State House of Representatives. Kott advised Allen that the best person to run his campaign was his son, but if his son ran the campaign then he would lose $7,000 in flooring wages. Kott told Allen that his son represents him well, and it would be difficult for Kott to run a winning campaign by himself. Kott did not recall if the job at Allen's house was complete at the time of this conversation.

Allen suggested that Kott prepare a new invoice for the refinishing job. This conversation occurred at Allen's house. The purpose of this second invoice was to provide money to pay Kott's son for the wages that he would lose while working on his father's campaign. The second invoice was for $19,993. Kott could not recall exactly how the amount was determined. Kott's son generally earns approximately $6,000 a month from the floor business. Kott's son received $7,000 of the funds from the second invoice.

Allen paid Kott by check. The check may have been from a VECO account. Kott does not know how Allen runs his cash through his personal and business accounts.

FD-302 (Rev. 10-6-95)

-1-

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription 10/28/2004

████████████ date of birth ████████ Social Security Account Number ████████ was interviewed at the SeaTac Correctional Facility in Seattle, Washington. Present with ██████ was her attorney, Sue Ellen Tater. Also present was Assistant United States Attorney, Frank Russo. ████ provided the following information:

████ had sex with BILL ALLEN when she was 15 years old. ████ previously signed a sworn affidavit claiming she did not have sex with ALLEN. ████ was given the affidavit by ALLEN's attorney, and she signed it at ALLEN's request. ████ provided false information on the affidavit because she cared for ALLEN and did not want him to get into trouble with the law.

With respect to JOSEF BOEHM, ████ reported that, among other things, she would bring BOEHM girls, with whom BOEHM would have sex. One of the girls ████ knows BOEHM had sex with was ████ as ████ had sex with BOEHM and ████ together.

████ known to law enforcement as ████ has been staying at BOEHM's condominium with ████. ████ heard from ████ that ████ received large sums of money from BOEHM. After BOEHM went to jail, ████ and ████ starting bringing some of the girls who might testify against BOEHM back to the condo and getting them "high." ████ heard that BOEHM wanted ████ (known to law enforcement as ████) to stay at the condo and stay around ████ so she would not testify against him.

████ was shown a photograph of ████, Alaska Driver's License (ADL) Number ████. ████ identified the person in the picture as ████. ████ stated this female had sex with BOEHM and may have gotten pregnant by him. She is a drug user.

████ was shown a photograph of ████, ADL Number ████. ████ identified the person in the picture as ████. At one point ████ dated ████. His family owns a real-estate business, but ████ once told ████ that he made his money from selling drugs. Over the course of a three week period, ████ and ████ spent

Investigation on 07/22/04 at Seattle, Washington

File # 305C-AN-13699   Date dictated  not dictated

by  SA John Eckstein

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

004666

D2 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription 10/11/2007

████████, date of birth ████████, was advised of the identity of the interviewing agent and the purpose of the interview. Also, present during the interview was SUE ELLEN TATER, an attorney representing ████ and JOE BOTTINI, an Assistant United States Attorney. ████ provided the following information:

████████ (last name unknown) was extorting BILL ALLEN regarding an alleged relationship between ████████ and ALLEN. TYREE came up with an idea to sign a document to prevent further extortions by ████. ████ met with an attorney in a downtown office building close to Phil Weidner's office. The content of the document was created solely by ████ with the help of the attorney.

Investigation on 10/10/2007 at Anchorage, Alaska

File # 194A-AN-13620-BALLEN                Date dictated Typed on 10/11/07

by SA Mary Beth Kepner:mbk

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency.

004668



**U.S. Department of Justice**

Criminal Division

Washington, D.C. 20530

September 7, 2007

James A. Wendt, Esq.
425 G Street, Suite 610
Anchorage, AK 99501

    Re:    United States v. Peter Kott, No. 3:07-cr-00056-01-JWS (D. Alaska)

Dear Jim:

    We write to provide you notice of the following information. Potential government witnesses Bill J. Allen and Richard L. Smith, if they testify at trial, would testify that with regard to many of the benefits they and VECO provided to Peter Kott both before and during the conspiracy (including but not limited to storage space at the "Toy Store", flooring tools, auction items, assistance for political campaigns by Kott's relatives, and assistance with the purchase of a truck), Allen and/or Smith and/or VECO provided such benefits partly so that Kott would continue to take official actions on the part of VECO and Allen and partly because Allen and Smith considered Kott a friend.

    If you have any questions, please do not hesitate to contact us.

                            Very truly yours,

                            William M. Welch, II
                            Chief, Public Integrity Section

                            Nicholas A. Marsh
                            Edward P. Sullivan
                            Trial Attorneys, Public Integrity Section

                            Joseph W. Bottini
                            James A. Goeke
                            Assistant U.S. Attorneys
                            District of Alaska

From: Marsh, Nicholas
Sent: Tuesday, September 11, 2007 12:01 PM
To: Welch, William
Subject: Re: Report from the North

Absolutely. What Allen was talking about was that he didn't think Kott did to him what Dave Anderson did to him. But Allen confirmed -- and we covered this again last night just to be clear -- that he knew that he was giving Kott the money to keep Kott in line on the gas line. Sorry for not explaining that more in my email.

----- Original Message -----
From: Welch, William
To: Marsh, Nicholas
Sent: Tue Sep 11 09:31:15 2007
Subject: RE: Report from the North

Nick

I want to clarify this email based on our telephone call yesterday. Allen's statement that "Kott did not extort me" was elicited as part of mock cross. In addition, Allen did not offer any factual statements inconsistent with the factual basis for the elements of the charges. In other words, he still agreed that he paid Kott things because of Kott's office and what Kott was doing for VECO, and would not have paid Kott absent his office or the use of his office for VECO. Rather, Allen's statement was more along the lines of a legal conclusion without understanding the legal elements of extortion under color of official right, and such a legal conclusion is the ultimate question for the jury and would be inadmissible anyway.

From: Marsh, Nicholas
Sent: Monday, September 10, 2007 1:31 AM
To: Welch, William; Morris, Brenda
Subject: Report from the North

Bill/Brenda:

[ Redactions ]

(1)   Allen is a horrible witness. No shock there, but he's been backsliding significantly on us over the past day or two. He has now taken to volunteering, even when not asked, things like "Pete Kott was my friend" and "he never extorted me." We finally had a heart-to-heart with him tonight where we went through the tapes again and talked to him about his own statements, on the tapes, where he linked the VECO job to gaining Pete's official support. He seemed to get it by the end. I think he's in a good place right now, but the guy is like mercury on a plate glass window. We won't know what we'll get until he takes the stand.

[ Redactions ]

004670